IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| QFS TRANSPORTATION, LLC, | : | Case No. 1:21-cv-92 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| ESTRADA TRANSPORT GROUP, INC., | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant Knight Express Inc.'s Motion for

Summary Judgment (Doc. 75). Plaintiff filed a Response in Opposition (Doc. 76), to which

Defendant filed a Reply in Support (Doc. 78). For the following reasons, the Court

**GRANTS** the Motion (Doc. 75).

## BACKGROUND

Plaintiff QFS Transportation, LLC, ("QFS") brought an action for breach of

contract, tortious interference, violations of Ohio's Deceptive Trade Practices Act, and

violations of the federal Lanham Act against one of its former shipping agents, Estrada

Transport Group, Inc. ("ETG"), its owner, Javier Estrada Jr., (collectively, the "Estrada

Parties") and one of QFS's direct competitors, Knight Express Inc. ("Knight Express").

(Am. Compl., Doc. 16, Pg. ID 217-19.) At bottom, the allegations state that the Estrada

Parties breached contractual duties to QFS by failing to pay amounts they contractually

owed, secretly forming Knight, a competing entity, and diverting business away from QFS to Knight during and after ETG had agreed to be an exclusive QFS agent. (*Id.*) At this point, the Estrada Parties have been voluntarily dismissed from this action. (*See* Notices of Dismissal, Docs. 12, 21.) Knight thus remains the sole Defendant in this action. The only claims remaining against Knight are tortious interference, violations of Ohio's Deceptive Trade Practices Act, and violations of the Lanham Act. (*See* Am. Compl., Doc. 16.) Knight filed a Motion for Summary Judgment (Docs. 73, 75) on all remaining claims. QFS filed a Response in Opposition (Doc. 76), to which Knight filed a Reply in Support (Doc. 78). About thirty days after filing its Motion for Summary Judgment, Knight filed a Proposed Findings of Fact (Doc. 79), which QFS moved to strike (*see* Motion to Strike, Doc. 80). Knight then filed a Response in Opposition to this Motion; QFS did not reply, and the time to do so has passed. Thus, all of these matters are now ripe for the Court's review.

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of

2

material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

### I.     Motion to Strike

Before addressing the merits of Knight's Motion for Summary Judgment, the Court touches on the preliminary matter of QFS's Motion to Strike Knight's Statement of Undisputed Facts (Doc. 80). In the Motion to Strike, QFS correctly points out that Knight filed its Motion for Summary Judgment without providing a proposed statement of undisputed facts, per the Undersigned's Standing Order III(B). (Motion, Doc. 80, Pg. ID 824.) About a month after filing its Motion for Summary Judgment, though, Knight filed a Proposed Statement of Undisputed Facts (*See* Doc. 79), seemingly in an effort to cure this defect. QFS argues that Knight's Proposed Statement was both untimely and noncompliant and "should be stricken from the record." (Motion, Doc. 80, Pg. ID 824.) Furthermore, QFS argues that this delay caused prejudice, as QFS had already responded to Knight's Motion for Summary Judgment when Knight filed the Proposed Statement. (*Id.* at Pg. ID 825.) QFS contends that, if the Proposed Statement is not stricken, then QFS

3

will be denied the opportunity to adequately respond and rebut Knight's proposed undisputed facts, or it will have to duplicate efforts to respond a second time. (*Id.*)

The Undersigned's Standing Orders read, in relevant part, "Counsel must attach to the initial brief in support of a motion for summary judgment a document titled 'Proposed Undisputed Facts.'" Standing Order III(B)(1). A court indeed has "inherent power to control [its] docket." *Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp.2d 818, 822 (S.D. Ohio 2010). And, a court "acts within its discretion when it strikes a filing for, *inter alia*, untimeliness or failure to comply with the local rules." *Schilling Foods, LLC v. First Data Corp.*, No. 2:18-CV-2320, 2021 WL 5161908, at *1 (W.D. Tenn. Aug. 30, 2021). Knight's Response indicates that the purpose of a statement of undisputed facts is to "assist both the Court and opposing counsel in their respective duties as to a pending motion for summary judgment." (Response, Doc. 81, Pg. ID 828.) While that may be true generally, here, Knight filed its Proposed Statement *after* QFS had responded to the Motion for Summary Judgment. QFS therefore could not have "take[n] advantage of the information included" in the Proposed Statement. (*See id.*) In the interests of justice, the Court exercises its discretion and strikes Knight's untimely Proposed Statement.

## II.    Motion for Summary Judgment

Having addressed this preliminary matter, the Court now examines the merits of Knight's Motion for Summary Judgment (Doc. 75). The Court will begin with the tortious interference claim, then will proceed to the Ohio Deceptive Trade Practices Act claims, and will end with the Lanham Act claims.

### a. Tortious Interference

To establish a claim for tortious interference, a plaintiff must show (1) the existence of a business relationship or contract; (2) the tortfeasor's knowledge of the relationship or contract; (3) the tortfeasor's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Bowshier v. Chrysler Fin. Corp.*, 144 F. Supp. 2d 919, 926 (S.D. Ohio 2001) (collecting cases). "Interference with the business relationship alone is insufficient to sustain a cause of action." *Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 717 (S.D. Ohio 2023) (cleaned up).

There is no dispute that QFS and the Estrada parties had a contractual relationship. (*See* Motion, Doc. 75, Pg. ID 760; Response, Doc. 76, Pg. ID 772.) Rather, Knight argues that this claim fails because Knight had no relationship with QFS and, as a small business, it "has every right to compete against QFS." (Motion, Doc. 75, Pg. ID 760.) In response, QFS notes that Knight's owner, Zambrano, was in a relationship with Estrada for over twenty years. (Response, Doc. 76, Pg. ID 772 (citing Zambrano Aff., Doc. 75, ¶ 5).) Zambrano was aware of QFS's business relationship with ETG. (*Id.* at Pg. ID 773 (citing Zambrano Dep., Doc. 76-3, Pg. ID 796-97).) As she sometimes helped ETG with paperwork, she was aware of QFS's customers. (*Id.*) Many of these customers match with those that Knight served, and at least one of Knight's drivers also worked under the Estrada parties for QFS. (*Id.*) In its Reply, Knight retorts that "mere instances of relationships at or about the same time do[] not establish any particular conduct on the part of Knight." (Reply, Doc. 78, Pg. ID 812.)

5

While the Court agrees that QFS can satisfy the first and second prong of its tortious interference claim, it finds that the claim falls short on the third prong: intentional and improper action taken to interfere with QFS's contract with the Estrada parties. In order to prove the third element, the plaintiff must either "(1) prove that the defendant acted with the purpose or desire to interfere with the performance of the contract or (2) prove that the defendant knew that interference was certain or substantially certain to occur as a result of its actions." *Horter Investment Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 924 (S.D. Ohio 2017). In *Cutter*, the defendant not only knew of the contract at issue and how its actions would affect the contract, but also intentionally structured its new investment advisory firm in a way that would avoid triggering a restrictive covenant within that contract. *Id.* at 924-25. Another court in this district found similarly in *Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 717-18 (S.D. Ohio 2023). There, the plaintiff, a mortgage lender, sued former employees and a competing mortgage lender; the employees uploaded client lists for use by the competitor who recruited them. *Id.* at 714-15. On the tortious interference claim against the competing lender, the court found that, not only did the business know that one of the former employees uploaded confidential client lists upon leaving the company, but the competitor "actively encouraged and instructed them to do so." *Id.* at 717.

Here, though, the Court finds nothing in the record to suggest Knight's intentionality or even that "interference was certain or substantially certain to occur" as a result of its formation and engagement in the shipping and logistics industry. *See Cutter*, 257 F. Supp. 3d at 924. The most connection that QFS can show between Knight and itself

is that Zambrano, while performing invoice work for ETG, "was exposed to QFS's customers," some of which crossed over with Knight's customer base. (Response, Doc. 76, Pg. ID 773.) However, Zambrano testified that she "never really paid attention to" the loads ETG ran through QFS; and while she admits she "would probably see confirmations" of the customers ETG served through QFS when going through ETG's invoices, she again "never really paid attention to all that stuff." (Zambrano Dep., Doc. 76-3, Pg. ID 796-97.) And, Zambrano's personal relationship with Estrada says nothing of Knight's interference with QFS's contracts. The Court does not find that these facts rise to the level of intentional interference required by Ohio law. Unlike in *Cutter* or *Thoman*, Zambrano had no interest in or involvement in the contracts ETG had with QFS, nor any direct acts taken against QFS's business aside from normal competition in the industry. There is no dispute of this fact. Although the Estrada parties may have intended to undercut QFS by forming Knight, this alone does not show that Knight, or its agent, Zambrano, acted with the requisite intentionality to sustain a tortious interference claim. The Court thus agrees that Knight is entitled to summary judgment on this claim.

### b. Ohio Deceptive Trade Practices Act and Lanham Act

Next, the Court examines the Ohio Deceptive Trade Practices Act ("DTPA") and Lanham Act claims. The DTPA "is substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising." *Robins v. Glob. Fitness Holdings, LLC,* 838 F. Supp. 2d 631, 649 (N.D. Ohio 2012) (cleaned up). Accordingly, when "adjudicating claims pursuant to the DTPA, Ohio courts shall apply the same analysis applicable to the claims commenced under analogous federal law." *Id.* (cleaned

up). This Court thus proceeds with the analysis of these two claims together. To prevail on a claim under these statutes, a plaintiff must establish: "(1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff." *LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 380 (6th Cir. 2012).

The crux of QFS's claims under these statutes is that Knight held itself out as associated with QFS, specifically with Knight's alleged use of QFS's marks on one of its trucks. (*See* Am. Compl., Doc. 16, Pg. ID 14-19; *see also* Response, Doc. 76, Pg. ID 774.) QFS points to an image of a truck that was registered to Knight as of March 24, 2021, but that bore a QFS placard on the cab. (*See* Response, Doc. 76, Pg. ID 774; *see also* Inspection Report, Ex. A, Doc. 76-3, Pg. ID 782-83, 786.) However, Knight replies by stating that Zambrano "emphatically denied ever using QFS authorizations to actually move cargo," and that she "provided explanations to how a QFS placard might show up" on the truck. (Reply, Doc. 78, Pg. ID 818 (citing Zambrano Dep., Doc. 76-3, Pg. ID 799-800).) Indeed, when asked whether the truck in the photo was one of hers, she responded "no." (*See* Zambrano Dep., Doc. 76-3, Pg. ID 800.) When asked why public records listed this truck as belonging to Knight, she responded that perhaps the truck is associated with one of Knight's former drivers, but reiterated that Knight owns no trucks of its own. (*Id.* at Pg. ID 800-01.) And, she stated that the driver would have been a former driver for Knight,

8

because she inspects all trucks before running loads for Knight to ensure that they contain no other signage. (*Id.* at Pg. ID 801-02.)

Given this testimony, the Court finds that QFS fails to establish the first element of these claims, that Knight made false or misleading statements with regard to its connection with QFS. Rather, the record shows that Knight made no such statement, as Zambrano testified that Knight owns no trucks and she would not have allowed one of Knight's drivers to carry a load with different signage on the truck. (*See* Zambrano Dep., Doc. 799-801.) Viewing the facts in a light most favorable to QFS, the testimony is still unequivocal that Knight did not own trucks and did not allow drivers to have other placards on any trucks carrying its loads. QFS has not disputed these facts and has failed to provide other evidence of Knight falsely holding itself out as connected with QFS. Put simply, there is no evidence that Knight used QFS's marks, or otherwise represented a connection with QFS, in a false or misleading way.

Furthermore, viewing the facts in a light most favorable to QFS and assuming that somehow Zambrano had missed the QFS placard on a truck before the driver took a Knight load, this would not change the outcome. The final element of these claims requires that the plaintiff show a causal connection between the false representation and its own damages. *See LidoChem*, 500 F. App'x at 380; *see also N. Am. Bus. Assoc., LLC v. United Merch. Servs. Club, LLC*, No. 6:22-CV-85, 2024 WL 1258626, at *8 (E.D. Ky. Mar. 25, 2024) ("The injury element asks whether the defendant's deception of the consumer caused harm to the plaintiff.") (quotation omitted). QFS has not presented any evidence that this specific placard has "misled and confused" its customers, causing a "loss of good

will with customers and damage to QFS's reputation," as it alleges in the Complaint. (Am. Compl., Doc. 16, Pg. ID 14-19.) The Court finds, therefore, that Knight is entitled to summary judgment on these claims as well. *McNeil v. Mount Carmel Health Sys.*, 643 F. Supp. 3d 810, 822-23 (S.D. Ohio 2022) (granting summary judgment where plaintiffs failed to show that their reputational injuries flowed "directly from [d]efendants' alleged false advertising"). The adverse instruction sanction, which confirms that Knight's former driver was associated with the truck, does not preclude summary judgment either, as QFS has nevertheless failed to establish the final element of its claims. *See Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 521 (6th Cir. 2014).

## CONCLUSION

Accordingly, QFS has failed to establish a material dispute of fact for any of its remaining claims against Knight. For the foregoing reasons, the Court **ORDERS** the following:

1. QFS's Motion to Strike (Doc. 80) is **GRANTED**;

2. Knight's Proposed Statement of Undisputed Facts (Doc. 79) is **STRICKEN**;

3. Knight's Motion for Summary Judgment (Doc. 75) is **GRANTED;**

4. The trial calendar is **VACATED**;

5. To the extent that Defendant has not paid the $15,756.00 sanctions award to Plaintiff (*see* Order, Doc. 69), Defendant **SHALL PAY** the award; and

6. This matter is hereby **TERMINATED** from the Court's docket.

   **IT IS SO ORDERED**.

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

11